IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HEATHER M. CLOSSER, | **4:21CV3040** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| HKT TELESERVICES (US) INC., P.C.C.W. TELESERVICES (US) INC., c/o HKT Teleservices;  HKT TELESERVICES INC., c/o Vincent J. Tersigni, Jackson Lewis; JEWEL THOMAS, Human Resources Manager; ANGEL SLAUGHTER, Human Resources Generalist; and DOUG GARRISON, Site Director, | |
| Defendants. | |

Plaintiff filed her pro se Complaint (Filing 1) on February 23, 2021, and has been granted leave to proceed in forma pauperis. The court now conducts an initial review of the Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

Plaintiff alleges she was retaliated against by her employer's local manager for reporting sexual harassment on the part of a supervisor against a co-worker in December 2018, and ultimately was discharged, in December 2019, by the human resources department at corporate headquarters for reporting the local manager's harassment and retaliatory behavior beginning in July 2019. The EEOC issued a right-to-sue notice on November 25, 2020.

## II.  APPLICABLE STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). A "liberal construction" means that if the essence of an allegation is "discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## III.  DISCUSSION

This is an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Filing 1, p. 4.) Plaintiff also lists various claims she allegedly has under Nebraska law. (Filing 1, p. 5.)

A. Title VII Claim

Plaintiff's federal claim arises under 42 U.S.C. § 2000e-3(a).[1] To establish a prima facie case of retaliation under this statute, Plaintiff must show "(1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two." *Lopez v. Whirlpool Corp.*, 989 F.3d 656, 664 (8th Cir. 2021) (quoting *DePriest v. Milligan*, 823 F.3d 1179, 1187 (8th Cir. 2016)).

Plaintiff can satisfy the first element if she "oppos[ed] an act of discrimination made unlawful by Title VII ('the opposition clause'), or participat[ed] in an investigation under Title VII ('the participation clause')." *Id.* (quoting *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002)). Plaintiff must show "an objectively reasonable belief that an actionable Title VII violation has occurred for [her] complaint to qualify as a protected activity." *Id.* (quoting *Gibson v. Concrete Equip. Co., Inc.*, 960 F.3d 1057, 1064 (8th Cir. 2020)). This reasonableness assessment is made "in light of the applicable substantive law." *Gibson*, 960 F.3d at 1065 (quoting *Brannum v. Mo. Dep't of Corr.*, 518 F.3d 542, 548-49 (8th Cir. 2008)). Protection under Title VII "does not depend on proving the illegality of the complained-of conduct." *Auer v. City of Minot*, 896 F.3d 854, 859 (8th Cir. 2018). The Eighth Circuit "generally construe[s] § 2000e-3(a) 'broadly to cover opposition to employment actions that are not unlawful, as long as the employee acted in a good

---

[1] "It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3(a) (Westlaw 2021). Similarly, the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. § 48-1101 *et seq.*, makes it unlawful for an employer to discriminate against an employee because he or she has "opposed any practice made an unlawful employment practice" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the act, …." Neb. Rev. Stat. Ann. § 48-1114(1)(a) & (b) (Westlaw 2021). "Nebraska courts look to federal decisions when construing the NFEPA because the NFEPA is patterned after Title VII." *Malone v. Eaton Corp.,* 187 F.3d 960, 962 n. 3 (8th Cir.1999).

faith, objectively reasonable belief that the practices were unlawful.'" *Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, 908 F.3d 1098, 1103 (8th Cir. 2018) (quoting *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1020 (8th Cir. 2011)); *cf. Barker v. Mo. Dep't of Corr.*, 513 F.3d 831, 835 (8th Cir. 2008) ("Conduct is not actionable under Title VII if no reasonable person could have believed the incident violated Title VII's standard.").

The second element can be satisfied with a showing that "a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Lopez*, 989 F.3d at 664-65 (quoting *AuBuchon v. Geithner*, 743 F.3d 638, 642 (8th Cir. 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006)).

Third, any adverse employment action must have been motivated by the employer's "desire to retaliate" against Plaintiff for reporting discriminatory and harassing behavior. *Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1136 (8th Cir. 2020) (quoting *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737-38 (8th Cir. 2013)); *see also Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017) ("The plaintiff's ultimate burden in a Title VII retaliation case is to prove an impermissible retaliatory motive was the 'but-for cause' of the adverse employment action."); *Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016) (retaliation must be the "but-for" cause of the adverse employment action).

A plaintiff need not plead facts sufficient to establish a prima facie case of employment discrimination. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002) (holding a complaint in employment discrimination lawsuit need not contain "facts establishing a prima facie case," but must contain sufficient facts to state a claim to relief that is plausible on its face), *abrogated in part on other grounds by Twombly*, 550 U.S. at 570. The elements of a prima facie case are relevant to a plausibility determination, however. They "are part of the background against which a plausibility determination should be made," and "may be used as a prism to shed light upon the plausibility of the claim." *Blomker*, 831 F.3d at 1056 (quoting *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013)); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("While the

[Federal Rule of Civil Procedure] 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.").

Plaintiff alleges she reported to her employer's site director, Defendant Doug Garrison, in December 2018 that her supervisor was sexually harassing a coworker. This allegedly resulted in Plaintiff being required to perform the supervisor's duties as well as her own while the supervisor was placed on a 3-day suspension. Plaintiff claims she was "subject to pervasive harassment from that point on." Plaintiff alleges she complained to an HR representative, Defendant Angel Slaughter, in July 2019 about Garrison's "harassment and retaliation." Plaintiff allegedly followed up with Slaughter in October 2019, who said she would inform her boss, Defendant Jewel Thomas, about the situation, but there was no further response. Plaintiff alleges she then contacted Thomas directly in November 2019, when Thomas was visiting the local office; Thomas said she "had not been notified about the events taking place here with Doug Garrison and his behavior towards myself and others," but would investigate. This personal contact was followed by a conference call with Slaughter and Thomas a few days later, during which Slaughter allegedly raised her voice at Plaintiff for questioning why she had not reported Plaintiff's complaints to Thomas, and a final conference call with Thomas on December 10, 2019. Thomas allegedly told Plaintiff there was nothing in the file to show that her supervisor was suspended for sexual harassment. The HR department then terminated Plaintiff's employment for her "attendance and behavior." (Filing 1, p. 8).

In the charge of discrimination Plaintiff filed jointly with the Lincoln Commission on Human Rights (under NFEPA) and the EEOC (under Title VII) on December 17, 2019, she claimed both sex discrimination and retaliation, alleging she "was subjected to different terms and conditions of employment, to illegal harassment which created a hostile work environment based on my sex (female), and discharged in retaliation for engaging in a protected activity …." (Filing 1, p. 25.) Specifically, Plaintiff alleged:

3.   Since in or around late 2018, Garrison began to harass me after I reported another male manager who sexually harassed a female

employee. This included that Garrison assigned me that male's workload when he was suspended for three days.

4.   On or about July 11, Garrison harassed me about work he thought I should be performing even though I had undertaken the duties for several vacant positions. That same day, when I attempted to address issues with him about another supervisor, Garrison informed me that "my opinion didn't matter."

5.   I contacted Respondent Human Resources Angel Slaughter on or about July 25 and complained about Garrison's behavior. Slaughter informed me she would contact her supervisor Respondent Human Resources Manager Jewel Thomas. Slaughter then contacted me by email on two occasions to ask how things were going, but no action was taken on my complaint.

6.   On or about October 2, Garrison called me a "dummy" and told me to "go outside and to practice slapping [myself]." On or about October 3, I confronted Garrison about his behavior, and he made fun of me by contacting another employee to sarcastically ask her if she was "bothered" by what he said to me.

7.   On or about October 7, I complained to Slaughter about what Garrison had said to me, and on or about October 8, I provided her with statements about the issues, which Slaughter was to investigate.[2] On or about October 25 and October 28, I emailed Slaughter to ask about the investigation, but did not hear back from her.[3]

8.   On or about November 19, a conference call was held with Thomas, Slaughter, Respondent Human Resources Vice President Jeff Hurl, and me. I was informed my allegations against Garrison

---

[2] Plaintiff alleges she "reached out to Angel Slaughter (HR) again because of the site directors [*sic*] (Doug Garrison) retaliating behavior towards me for reaching out to her" on July 25. (Filing 1, p. 7.)

[3] Plaintiff's emails show she was complaining about the July 11 and October 2-3 incidents, which Plaintiff described as the "first" and "second" incidents. There is no mention of the alleged December 2018 harassment or retaliation. (Filing 1, pp. 13-16.)

       could not be validated, but they did find that Garrison had "poor management skills and showed favoritism."

9.     At that same meeting, I asked about the complaint I made to Slaughter on or about July 25. Thomas and Hurl stated they knew nothing about it. I was informed they would investigate those allegations.

10.    On or about December 10, Thomas terminated my employment for allegations I deny occurred.

(Filing 1, p. 26.)

      Plaintiff sufficiently alleges she engaged in protected activity in December 2018 when she reported sexual harassment in the workplace. Her Complaint fails to show, though, that she suffered any adverse employment action as a result. Merely being required to perform the suspended supervisor's duties for three days would not have "dissuaded a reasonable worker from making a charge of discrimination." *Lopez*, 989 F.3d at 664-65. To constitute an adverse employment action, the "action must be material, not trivial[.]" *AuBuchon*, 743 F.3d at 644 (quoting *Burlington N.*, 548 U.S. at 68). The retaliation must produce some "injury or harm." *Lopez*, 989 F.3d at 665 (quoting *Littleton v. Pilot Travel Ctrs., LLC,* 568 F.3d 641, 644 (8th Cir. 2009)). And, even if Plaintiff could clear this second hurdle, there is nothing in the Complaint to indicate that Garrison's action in assigning Plaintiff this additional job responsibility was motivated by a desire to retaliate.

      Plaintiff generally alleges that Garrison subsequently engaged in "harassment and retaliation," but the two instances she describes do not appear to involve either sexual harassment or retaliatory conduct. Garrison may have acted inappropriately in telling Plaintiff her "opinion didn't matter" and calling her a "dummy," but "Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace." *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 967 (8th Cir. 1999). The Eighth Circuit has held that "ostracism and disrespect by supervisors [does] not rise to the level of an adverse employment action." *Id.* (citing *Manning v. Metropolitan Life Ins. Co.,* 127 F.3d 686, 692-93 (8th Cir. 1997)).

Termination of employment is an adverse employment action, of course, but Plaintiff fails to allege a plausible connection between her firing and the report of sexual harassment she made one year earlier. While plaintiffs may use circumstantial evidence to prove causation, "[t]he more time that elapses between the two events ... the weaker the inference of causation." *Robinson v. Am. Red Cross*, 753 F.3d 749, 756 (8th Cir. 2014) (citation omitted). "In such cases a plaintiff must present additional evidence of a causal link, which can include 'escalating adverse and retaliatory action.'" *Id.* (citation omitted). *See, e.g., McKey v. U.S. Bank Nat'l Ass'n*, 978 F.3d 594, 601–02 (8th Cir. 2020) (four-month span between plaintiff's report of discrimination and the decision to fire her was too long to support causation for a retaliation claim without additional evidence); *Brunckhorst v. City of Oak Park Heights*, 914 F.3d 1177, 1184 (8th Cir. 2019) ("Without more, the four-month period between [the plaintiff's] first complaint of discrimination and his termination is not sufficient to establish causation through temporal proximity.").

As stated previously, Plaintiff is not required to allege facts sufficient to state a prima facie case of discrimination. However, when Plaintiff's Complaint shows on its face that there was a 12-month delay between her only protected activity and the only adverse employment action she suffered, it is incumbent upon Plaintiff to plead facts that link the two events. As it stands now, Plaintiff's Complaint fails to show that the report she made to Garrison in December 2018 even factored into Thomas's decision to fire Plaintiff in December 2019, let alone that it was the "but for" reason for the decision. Plaintiff "use[s] buzzwords like discrimination,[4] retaliation, and hostile work environment[5] as broad, catch-all terms for her claims," *Paskert v.*

---

[4] "Harassing conduct constitutes discrimination based on sex when members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Hocevar v. Purdue Frederick Co.*, 223 F.3d 721, 737 (8th Cir. 2000). Plaintiff does not allege this was the case, and Garrison's comments to Plaintiff do not demonstrate a misogynistic attitude.

[5] "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998). "Factors to consider when determining whether sexual harassment is sufficiently severe or pervasive include: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

*Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir. 2020), but has failed to show the necessary causal connection or retaliatory motive.

In summary, Plaintiff has failed to state a plausible claim for relief under Title VII or NFEPA. However, the court will give Plaintiff 30 days to file an amended complaint to reassert claims under these statutes. If Plaintiff elects to do so, she should be aware that Garrison, Slaughter, and Thomas cannot be held personally liable under Title VII or NFEPA, and thus should not be named as Defendants. *See Roark v. City of Hazen*, 189 F.3d 758, 761 (8th Cir. 1999) ("[A] supervisor may not be held liable under Title VII."); *See e.g.*, *Payne v. Contractor Lab., Loc. 1140*, No. 8:06CV685, 2007 WL 1362720, at *4 (D. Neb. Apr. 18, 2007) (dismissing Title VII and NFEPA claims alleged against supervisors); *Mekasha v. Al-Nemah*, No. 8:20CV54, 2020 WL 3250241, at *2 (D. Neb. June 16, 2020) (same).

## B. Other Claims

Plaintiff lists a number of causes of action arising under Nebraska law, but does not allege any material supporting facts. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Plaintiff first claims there was intentional or negligent infliction of emotional distress. "To state a cause of action for intentional infliction of emotional distress, a plaintiff must allege facts showing (1) that there has been intentional or reckless conduct, (2) that the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure

---

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Hocevar*, 223 F.3d at 737 (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993)). "More than a few isolated instances are required." *Id.*, at 737-38. Plaintiff's complaint fails to show she was subjected to a hostile work environment.

it." *Heitzman v. Thompson*, 705 N.W.2d 426, 430-31 (Neb. 2005). The Nebraska Supreme Court has "set a high hurdle for establishing outrageous conduct," *id.*, and the facts alleged in Plaintiff's Complaint do not come close to clearing that crossbar.

"The elements of a claim based upon negligent infliction of emotional distress are somewhat similar. In cases where the plaintiff is a 'direct victim' of the defendants' negligence, his emotional distress, which again must be 'so severe that no reasonable person should be expected to endure it,' must also be medically diagnosable and of medically significant severity." *Carhart v. Smith*, 178 F. Supp. 2d 1068, 1076 (D. Neb. 2001) (quoting *Sell v. Mary Lanning Memorial Hospital Association,* 498 N.W.2d 522, 524-25 (Neb. 1993)). "In addition, the plaintiff is required to show that the defendants were negligent and that their negligence caused the plaintiff's emotional distress. *Id.* Plaintiff does state an actionable claim negligence against any Defendant.

Plaintiff claims breach of contract, but "[i]n Nebraska, ordinarily, 'an employer, without incurring liability, may terminate an at-will employee at any time with or without reason.'" *Holbein v. TAW Enterprises, Inc.*, 983 F.3d 1049, 1062 (8th Cir. 2020) (quoting *Trosper v. Bag 'N Save*, 734 N.W.2d 704, 706-07 (Neb. 2007)). Because Plaintiff does not claim she had a contractual right to continued employment, no viable claim is stated.

Similarly, "in order for the implied covenant of good faith and fair dealing to apply, there must be in existence a legally enforceable contractual agreement." *Acklie v. Greater Omaha Packing Co.*, 944 N.W.2d 297, 308 (Neb. 2020). "The law does not allow the implied covenant of good faith and fair dealing to be an everflowing cornucopia of wished-for legal duties; indeed, the covenant cannot give rise to new obligations not otherwise contained in a contract's express terms." *Dick v. Koski Pro. Grp., P.C.*, 950 N.W.2d 321, 360 (Neb. 2020) (quoting *Comprehensive Care Corp. v. RehabCare*, 98 F.3d 1063, 1066 (8th Cir. 1996)). "Instead, a violation of the covenant of good faith and fair dealing occurs only when a party violates, nullifies, or significantly impairs any benefit of the contract." *Id.*

Plaintiff also claims there was a "breach of Nebraska wage and hour laws," but does not identify those laws or allege any facts which might constitute a breach

10

of any such law. The Nebraska Wage and Hour Act ("NWHA"), Neb. Rev. Stat. § 48-1201 *et seq*., establishes minimum wages. *See, generally, Mays v. Midnite Dreams, Inc*., 915 N.W.2d 71 (Neb. 2018). The Nebraska Wage Payment and Collection Act, ("NWPCA") Neb. Rev. Stat. § 48-1228 *et seq*., "essentially permits an employee to sue his or her employer if the employer fails to pay the employee's wages as they become due." *Lassalle v. State*, 948 N.W.2d 725, 733 (Neb. 2020).

Plaintiff next mentions "personal harassment," "sexual harassment," and "breach of civil rights." (Filing 1, p. 5.) There is no recognized cause of action for "personal harassment" under Nebraska law, but sexual harassment and other forms of civil rights violations are covered by NFEPA. As already discussed with reference to Plaintiff's Title VII claim, the facts alleged in the Complaint fail to show any NFEPA violation for sexual harassment or retaliation.

Plaintiff claims there was fraudulent or negligent misrepresentation, but, among other essential information, does not allege what was misrepresented, or by whom. "A fraudulent misrepresentation claim requires a plaintiff to establish the following elements: (1) A representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) the representation was made with the intention that the plaintiff should rely on it; (5) the plaintiff did so rely on it; and (6) the plaintiff suffered damage as a result. *Nathan v. McDermott*, 945 N.W.2d 92, 108-09 (Neb. 2020). "Negligent misrepresentation has essentially the same elements as fraudulent misrepresentation with the exception of the defendant's mental state." *Id.* at 109.

Finally, Plaintiff claims there was "interference with business relationship" and with "economic and business expectancy." (Filing 1, p. 1.) "To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. In order to be actionable, interference with a business relationship must be both intentional and unjustified." *Dick*, 950 N.W.2d

11

at 377. Such a claim cannot be directed at Plaintiff's employer, since "[t]he general rule is that a party cannot interfere with its own contract." *Huff v. Swartz*, 606 N.W.2d 461, 467 (Neb. 2000) (quoting *Nordling v. Northern States Power Co.,* 478 N.W.2d 498, 505 (Minn. 1991)). It might be possible for Plaintiff to bring a claim against the individual Defendants, but "in order to constitute actionable interference with an employment relationship, actions of a coemployee must be shown to have been committed in furtherance of some purpose other than the lawful purposes of the employer." *Id.* at 468. "If such interference is established, it must also be proved to be 'unjustified' in order to be actionable. *Id.* (citing *Koster v. P & P Enters.,* 539 N.W.2d 274 (Neb. 1995); *Matheson v. Stork,* 477 N.W.2d 156 (Neb. 1991)). Again, the factual allegations of Plaintiff's Complaint do not support such a claim.

## IV. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief may be granted, and is subject to preservice dismissal under 28 U.S.C. § 1915(e)(2). However, the court on its own motion will give Plaintiff 30 days to file an amended complaint. If Plaintiff files a timely amended complaint, the court will conduct another initial review; otherwise, the action will be dismissed.

IT IS THEREFORE ORDERED:

1. Plaintiff shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff.

2. Failure to consolidate all claims into <u>one document</u> may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, her prior pleadings.

3. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) in the event she files an amended complaint.

4. The Clerk of the Court is directed to set a pro se case management deadline using the following text: **May 3, 2021**—amended complaint due.

5. Plaintiff shall keep the court informed of her current address at all times while this case is pending. Failure to do so may result in dismissal without further notice

Dated this 2nd day of April, 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge